EXHIBIT "D"

I.U.O.E. LOCAL 15, 15A, 15C & 15D ANNUITY,
WELFARE and APPRENTICESHIP SKILL IMPROVEMENT
& SAFETY FUNDS

COLLECTION & AUDIT PROCEDURES

SECTION I

GENERAL POLICY

This policy is adopted by the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO (collectively the "Local 15 Funds") in order to coordinate the collection of required contributions. However, each Fund reserves the right to proceed independently in the collection of required contributions. It is the policy of the Local 15 Funds to collect all employer contributions as they are due and to make such diligent and systematic efforts as are appropriate under the circumstances to do so. References to a "Fund" shall refer to each individual Local 15 Fund separately.

If an employer ceases to have an obligation to contribute to a Fund under a Fund's Trust Agreement, a collective bargaining agreement ("CBA"), or applicable law, the employer shall remain subject to this Policy with regard to the time period during which the employer was obligated to contribute to the Fund or the Local 15 Funds, collectively.

It is the policy of the Local 15 Funds to collect all employer contributions as they are due, and to make such efforts as are appropriated under the circumstances to do so.

The Trustees of the Local 15 Funds have the legal right to exercise all remedies allowable under the Trust Agreement and the Employee Retirement Income Security Act of 1974, as amended (ERISA), including but not limited to:

1. the right to establish that contributions shall become due on the payroll date.

2. the right to establish a random audit program;

3. the right to audit the financial records of contributing employers, including but not limited to payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the employers necessary in order for the auditor to ascertain if proper contributions have been made, and to give an unqualified opinion;

4. the right to require that the delinquent employer pay the cost of the audit, interest, attorneys' fees and other expenses incurred by the Local 15 Funds

    in determining the amount of the delinquency and in the collection of such delinquency;

5. the right to collect liquidated damages;

6. the right to require a bond or a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to a Fund or the Local 15 Funds, collectively; and

7. the right to take all other steps and to perform all other acts that are necessary in order to collect contributions due the Local 15 Funds in a timely and expeditious manner.

  The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

  All questions or disputes relating to the interpretation, meaning and/or application of this Policy shall be finally and exclusively resolved by the Board of Trustees in the exercise of their discretion and in the performance of their fiduciary obligations to the Local 15 Funds' participants and beneficiaries, for the protection of the financial integrity and soundness of the Local 15 Funds, and the efficient and effective administration of the Local 15 Funds.

## SECTION II

## ADMINISTRATIVE PROCEDURE

  In accordance with the provisions of the applicable Trust Agreements and the above general policy declaration, the following administrative steps shall be taken to effectuate the collection of delinquent contributions.

  1. The Fund Office will maintain a list of all employers that are bound to a collective bargaining agreement with the Union.

  2. Employers shall make fringe benefit contributions by the purchase of a consolidate stamp from the Fund Office. Said stamps shall be placed in the employees' weekly pay envelopes, and shall be remitted to the Fund Office three (3) times per year: March and April, July and August, November and December. Further, pursuant to the terms of the applicable CBA, each Employer is required to submit a report of hours worked by its employees, along with the names and social security numbers of said employees. In the event a member/employee informs the Fund Office, Trustee or Union Representative that he has not received his stamps in his weekly pay envelope, or the information contained on the Employers hours worked report discloses a deficiency, then the Local 15 Funds shall consider the Employer to be delinquent and the Fund Administrator shall cause a delinquency notice to be sent via first class mail to the delinquent Employer. The notice shall advise the Employer that the

contributions must be received within ten (10) days of the date of the notice so as to avoid interest, legal fees and penalties.

3.  Interest shall accrue on delinquent contributions from the due date at the prime rate, plus one percent.

4.  If an employer has not made the remittance within ten (10) days from the date of the Notice, the Fund Administrator shall refer the matter to the Funds' legal counsel for collection.

5.  Legal Counsel shall follow procedures set forth in Section III of this Policy Statement.

6.  If an employer pays the principle amount of the delinquency but does not pay accrued interest and/or any other amounts owed, acceptance of the principal amount shall not constitute a waiver of the Local 15 Fund's claim for accrued and unpaid interest and/or any other amounts.

## SECTION III

## LEGAL ACTION AND SETTLEMENT

1.  When a collection matter has been referred to the Local 15 Funds' legal counsel the Fund Administrator shall forward to counsel the following documents so that he shall be able to send a lawyer's demand for payment letter:

    a.  a signed copy of the CBA;
    b.  name and address of the employer;
    c.  the amount due in contributions and the cost of audit; and
    d.  a copy of any audits performed.

2.  In the event that an employer fails to pay the delinquent contributions and interest within ten (10) days after legal counsel's demand for payment, legal counsel shall initiate suit to recover the delinquency unless counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to, the following:

    a.  the amount of the delinquency;

    b.  the length of time the delinquent amount has been owed;

    c.  the financial condition of the employer;

    d.  the employer's past performance as a contributing employer; and/or

    e.    any other factor that, in the discretion of legal counsel, may have a material bearing on the collection of the delinquent contributions.

3. Settlements calling for payments over time must be in writing and signed on behalf of the Local 15 Funds and the employer. Such settlement must include the requirement to make current contributions on a timely basis and shall include appropriate interest paid at 1% over the prime rate, a personal guarantee and default judgment requirements in the event the employer fails to make the required payments.

4. The Board of Trustees maintains the discretion not to commence a lawsuit if doing so would not be in the best interests of the Local 15 Funds.

5. The Board of Trustees reserves the right to accept or reject an employer's proposal regarding any delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel.

6. Notwithstanding the procedures set forth in this Policy, the Board of Trustees may refer any delinquent account to legal counsel at an earlier or later date than provided for herein when circumstances warrant that collection action be initiated forthwith.

7. Legal counsel and the Fund Administrator shall keep the Board of Trustees apprised of the status of these matters.

## SECTION IV

## PAYROLL AUDIT POLICY

1. The Board of Trustees shall have discretion in determining which employers will be audited in each year. Each employer shall generally be audited at least once during a three (3) year period. All employers shall be audited at least once during a five (5) year period, such period to commence from the date of the last audit of the employer, or in cases where from the date of the last audit of the employer, or in cases where an employer has not previously been audited, from the date the employer first became a participating employer in the Local 15 Funds. Each new employer shall be audited within the first year of its participation.

2. The Trustees may conduct an audit of any participating employer in accordance with the procedure set forth in the applicable CBA, whenever the Trustees resolve that the circumstances warrant such audit.

3. Notwithstanding the guidelines of this Section, the Trustees may, in the exercise of their discretion, determine that the audit schedule set forth above should not be followed in a particular instance.

4. Prior to conducting each audit, a Fund auditor shall notify the Fund Administrator and review the employer's CBA and any pending issues. The Fund auditor will forward a letter to the employer advising it of the impending audit, citing the Trustees' authority to conduct the audit and describing the records required.

5. In the event that to conduct an audit, the Trustees' authorized representative must travel more than 100 miles from the Fund Office location in New York City, the employer shall be required to reimburse the Local 15 Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds for the cost of the audit, including travel and lodging, regardless of whether or not a fringe benefit deficiency is scheduled in the final report issued by the authorized representative for the Trustees. The above shall only be applied after the employer has been provided, in written notices ten (10) days apart, that it may satisfy its requirement of producing the necessary records by forwarding them via express mail delivery to the Trustees' authorized representative.

6. Upon issuance of the Fund auditor's final report, the Funds' legal counsel shall send a letter to the employer demanding payment of any amounts found to be due by the auditor. In the event that the employer refuses to pay said amount found due and owing, the matter shall be referred to legal counsel.

7. In the event an employer refuses to permit an audit upon request by the Trustees, or if the employer refuses the Fund auditor access to pertinent records, then the Local 15 Funds' auditor shall refer the matter to legal counsel. Legal counsel shall thereafter demand in writing that the employer make available such books and records as are necessary for the Fund auditor to conduct an audit. If the records are still not made available, legal counsel shall institute legal action to enforce the Trustees' right to conduct a payroll audit and the employer shall pay to the Funds all costs and attorneys' fees incurred as a result of the employer's refusal to permit an audit or refusal to make available all pertinent records.

Approved:   June 28, 2001
Amended:   April 19, 2007